# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT JACKSON
March 4, 2014 Session

## STATE OF TENNESSEE v. DANIEL MUHAMMAD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 1002631      James C. Beasley, Jr., Judge**

---

**No. W2013-01395-CCA-R3-CD  - Filed June 25, 2014**

---

Defendant, Daniel Muhammad, and his co-defendant Michael Taylor were indicted by the Shelby County Grand Jury for aggravated arson. Defendant filed a motion to have his case severed from that of his co-defendant. The trial court denied Defendant's motion. Following a jury trial, Defendant was convicted of the lesser included offense of facilitation of aggravated arson. The jury was unable to reach a verdict as to co-defendant Taylor, and the trial court declared a mistrial. Defendant was sentenced as a Range II multiple offender to 12 years of incarceration. Defendant appeals his conviction and raises the following issues for our review: 1) whether the trial court abused its discretion in denying Defendant's motion to sever; 2) whether the trial court erred by not granting Defendant's motion for a mistrial; and 3) whether the evidence was sufficient to sustain Defendant's conviction. After a careful review of the record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Lance R. Chism, Memphis, Tennessee, (on appeal); Daryl Gray and David Stowers, Memphis, Tennessee, (at trial), for the appellant, Daniel Muhammad.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Amy P. Weirich, District Attorney General; Eric Christensen and Megan Fowler, Assistant District Attorneys General, for the appellee, the State of Tennessee.

**OPINION**

*Facts*

On August 28, 2009, at around 3:00 p.m., Martha Gray and her family were visiting on the front porch of her house at 1523 Pillow Street. Ms. Gray's niece had gotten into an argument with Defendant and two others, and Ms. Gray heard Defendant say, "don't worry about it because we going to burn the mother f***er down."

At around 4:00 a.m. on the following day, Ms. Gray's son, Rickey Gray, awoke to the smell of smoke. He discovered a fire burning near the back door in the kitchen, and he woke up the rest of his family. Michael Robison, Ms. Gray's live-in boyfriend, testified that after Mr. Gray woke him and they went outside, he saw that the grass around the house was burning and the fire was coming through the walls around the front door. After the family escaped the fire, they saw three African American males running down the street away from the house. Ms. Gray yelled to the men, "I know y'all did this," and the men laughed. She saw them enter a duplex. She identified the men as Defendant, his co-defendant Michael Taylor, and "Mayne." A few minutes after the men went inside the duplex, they left and got into a white truck parked outside. Michael Taylor was driving the truck.

On cross-examination, Ms. Gray testified that on the afternoon before the fire, Defendant and Mayne were talking to each other, and "Mayne" made the threat about burning down her house. On re-direct examination, Ms. Gray testified, "[t]here's no doubt in my mind. [Defendant] was out there with [Mayne] when they made the [threat] – it was him and the girl and Mayne."

Officer Michael Thomas arrived at the scene to conduct traffic control around the residence while the fire department was extinguishing the fire. While at the scene, Officer Thomas spoke to the victims, who gave a description of the individuals they saw running from the house and of the vehicle they were seen driving. Officer Thomas then saw Michael Taylor sitting in a white vehicle matching the description about one block from the fire. Officer Thomas detained Taylor. Taylor told Officer Thomas that he had not been to the residence where the fire occurred. Taylor's statement to Officer Thomas was unprompted.

Detective Ronald Weddle was called to investigate the fire at the victim's home. After speaking with Ms. Gray, Detective Weddle interviewed Defendant. Defendant gave contradictory statements about his whereabouts on the night of the fire. Defendant initially told Detective Weddle that he was not anywhere near the area of the fire, and Defendant denied any involvement in the fire. Defendant later told Detective Weddle that he was at a

house down the street on the evening prior to the fire, and then left and went to his grandmother's house, where he stayed for the night. Defendant also told Detective Weddle that he learned from his sister that he was a suspect in the arson and that he drove by the location of the fire, but Defendant later stated that he did not drive by the house after the fire. On cross-examination, Detective Weddle testified that he did not check Defendant's alibi, nor did he take a written statement from Defendant because Defendant gave conflicting statements.

Detective Stephen Roach arrived at the scene after the fire was extinguished and after Defendant was taken into custody. Detective Roach interviewed Defendant's co-defendant, Michael Taylor, at the police station. Detective Roach testified that when he entered the interview room, he smelled "a strong odor" of fruit scented hand sanitizer and then discovered an empty bottle of hand sanitizer in Mr. Taylor's pocket. During the interview, Mr. Taylor denied any involvement in the fire. Detective Roach also took a statement from Ms. Gray. In her statement, Ms. Gray did not tell detectives that Defendant had made a threat the previous day about burning her house.

Anthony Arnold, a fire investigator with Memphis Fire Services, was called to the scene to investigate the fire. Investigators determined that two fires were set at the front and back doors, and a third fire was set in the middle of the house in the kitchen. The fires were started by an ignitable liquid that was used to accelerate the fire. The location of the fires at the doors indicated that they were "designed to hold occupants inside" the house, and the third fire was intended "to hasten the fire." Mr. Arnold testified that he had "[n]o doubt" that the fires were set intentionally.

*Analysis*

*Severance*

Defendant contends that the trial court erred in denying his motion to sever his case from his co-defendant Michael Taylor's case. Defendant asserts that he was prejudiced by the State's cross-examination of Taylor and the rebuttal testimony of Detective Roach.

Prior to trial, Defendant filed a motion to sever. In denying Defendant's motion, the trial court determined that there was no basis to sever the defendants' cases as long as Detective Roach did not testify that Defendant was named by co-defendant Taylor in Taylor's statement to police. The State agreed to caution Detective Roach not to mention Defendant when testifying about his interview of Taylor. Based on the trial court's ruling, Detective Roach did not mention Defendant when testifying about his interview of Taylor.

During the State's case-in-chief, Defendant renewed his motion to sever based on his co-defendant Taylor's intent to testify. The trial court denied the motion for severance, finding, "I think the fact that you have antagonistic offenses is not necessarily sufficient grounds for me to grant a severance at this point." The trial court further stated, "Now, after Mr. Taylor testifies before you cross-examine, you know, if you want to renew your motion at that point. If I think there's a point – it needs to be done at that point, I can still consider it." Defendant renewed his motion again at the conclusion of the State's proof, and the trial court found, "[a]t this point, I don't see a basis for severance."

Mr. Taylor testified on direct examination that on the evening of August 28, 2009, he was "kicking it with some of [his] old buddies" in the Clayborn homes. He testified about his whereabouts on the night of the incident, but he did not testify that Defendant was with him. During the State's cross-examination of Taylor, Taylor did not recall Detective Roach asking him about the fire at the victim's home. He denied telling Detective Roach that Defendant and Mayne asked him to pick them up after the fire. After the defense rested, the State called Detective Roach as a rebuttal witness. In an attempt to impeach Taylor, the State began to question Detective Roach about Taylor's statement to him, and defense counsel objected and again renewed Defendant's motion to sever. After a recess, the trial court made the following ruling:

> Well, I've been reviewing some stuff on this severance issue and it appears to the Court that although Mr. Taylor during his testimony didn't implicate [Defendant], I think under the law with regard to either antagonistic defenses or even if you get into those situations, if Mr. Taylor had taken the stand and implicated [Defendant], I think that's permissible. I don't think that that's grounds for severance. I feel the law would allow that. He's subject to cross-examination.
>
> And if it would be permissible for Mr. Taylor to do that for purposes of rebuttal where Mr. Taylor is being impeached by a statement that he gave the police, thereby impeaching his credibility, it's to me at least one step removed from Mr. – if Mr. Taylor can do it, then, in my opinion, Officer Roach can do the same thing through his impeachment.
>
> Now, I have an instruction that says the evidence should be considered against the one. On my instructions about separate consideration for each defendant, I instruct the jury as to how they're to weigh that evidence.

In light of the testimony and the purpose of Officer Roach's testimony, I will admonish the jury that that testimony goes strictly to the credibility of Mr. Taylor and it's not to be used against [Defendant] for any purpose. Other than that, I will deny the motion for severance, but I will admonish the jury to that extent.

The trial court gave the following instruction to the jury:

Before I start my instructions, let me just give you a little admonition. The testimony that you just heard from Officer Roach, we are trying one trial but basically we're trying two trials.

You have each defendant on trial, Mr. Taylor and [Defendant]. They're entitled to a separate trial. The facts that are presented in the case that apply to Mr. Taylor should be considered in the case of Mr. Taylor, and the facts that are provided in the case that apply to [Defendant] should be considered and applied to [Defendant], and anything that overlaps obviously you can consider for each of them.

But the testimony that we just heard from Officer Roach was specifically to rebut the testimony of Mr. Taylor. And the statements that were made are questions that were asked of Officer Roach with regard to statements made by Mr. Taylor that may have mentioned or used [Defendant]'s name cannot be used against [Defendant]. Those are statements that were offered to respond to or rebut testimony given by Mr. Taylor. Those issues are to be considered as to Mr. Taylor. Does everyone understand that?

Whether those statements are true or not true is not the question. The question is it goes strictly to credibility and it goes to the credibility of Mr. Taylor and it does not have anything to do with [Defendant]. Does everyone understand that concept?

At the hearing on Defendant's motion for new trial, the trial court affirmed its prior ruling that there were no grounds to sever the cases prior to trial, and the court stated that it had "admonished the jury with regard to the testimony as to Mr. Taylor and as to [Defendant] and how they were to deal with it[.]" The trial court indicated, however, that allowing Detective Roach to testify about Mr. Taylor's statements regarding Defendant was likely error, but it was harmless error. The court stated:

The rebuttal proof that got into Mr. Taylor's prior statements implicating [Defendant], I had some problems with that, but I'm going to find that although that may have been prejudicial to [Defendant] that in light of all the testimony and all of the – the strength of all of the identifications, I find that if it was error, that it was harmless; that it did not impact or effect the verdict of the jury; and I'll just have to allow that to stand because I do recall having some reluctance about that testimony when I heard it; but I don't think it was sufficient grounds for me to grant a severance; and I don't think that, in the overall proof of the case, it made a difference in the verdict of the jury. So, I'm going to find that that issue has no merit.

On appeal, Defendant contends that he was "highly prejudiced" by the State's cross-examination of Taylor. On cross-examination, the State asked Taylor if he told Detective Roach that Defendant and Mayne went to the house near the victim's house where Taylor was and asked Taylor to give them a ride or if Taylor told Detective Roach that Defendant and Mayne asked Taylor to pick them up after the fire. Defendant argues that, although Taylor denied making those statements to Detective Roach, it was prejudicial for the jury to hear the State's questions because Taylor's statements to Detective Roach would have been inadmissible in Defendant's trial had he been tried separately. Defendant asserts that he was further prejudiced by Detective Roach's rebuttal testimony that Taylor told him that Defendant and Mayne asked him to give them a ride in the early morning hours after the fire and that they mentioned "[s]omething about a fire."

A trial court's decision to grant or deny a severance of defendants "is a matter that rests within the sound discretion of the trial court," and this court may not reverse the trial court's ruling "absent clear abuse of that discretion." *State v. Dotson*, 254 S.W.3d 378, 390 (Tenn. 2008). To determine whether the trial court has abused its discretion, this court examines the record to see "whether the Defendant was 'clearly prejudiced'" by the trial court's decision. *Id*.

The practice of trying co-defendants in a single trial is "aimed at achieving improved judicial economy and efficiency." See Tenn. R. Crim. P. 8, Committee Cmts. According to Tennessee Rule of Criminal Procedure 14(c)(2)(A) and (B), a trial court must sever the defendants before trial if "appropriate to promote a fair determination of the guilt or innocence of one of more defendants," and during trial if "necessary to achieve a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(A) and (B).

Defendant concedes that there was no "*Bruton* issue" in this case because his co-defendant Taylor testified and was subject to cross-examination. "The *Bruton* rule proscribes, generally, the use of one co-defendant's confession to implicate the other as being violative of the nonconfess[ing] co-defendant's Sixth Amendment right of confrontation." *State v. Elliot*, 524 S.W.2d 473, 477 (Tenn. 1975); *see Bruton v. United States*, 391 U.S. 123 (1968). The Advisory Commission Comments to Tennessee Rule of Criminal Procedure 14 state that "[s]ubdivision (c)(1) contains provisions making severance unnecessary where no Bruton violation would follow, as would be true, for example, where the confessing codefendant testifies or where redaction eliminates any prejudice to the nonconfessing codefendant." Tenn. R. Crim. P. 14, Advisory Comm'n Cmts. Defendant asserts that although a *Bruton* violation did not occur in this case, severance was necessary in order to "achieve a fair determination of the guilt or innocence" of Defendant.

We conclude that the trial court did not abuse its discretion by denying Defendant's motion to sever either before trial or during trial. Prior to trial, there was no basis for a severance because no proof was being introduced that would be prejudicial to Defendant. The trial court limited Detective Roach's testimony to specifically exclude any mention of Defendant in testifying about Taylor's statement to Detective Roach. Furthermore, the defendants' respective positions at trial were not adverse to each other. Taylor denied being with Defendant on the night of the incident. When Taylor was impeached by Detective Roach's rebuttal testimony, the trial court made it clear to the jury that they were to consider the testimony only for the sole purpose of determining Taylor's credibility, and in no way was the testimony to be considered in determining Defendant's guilt. Moreover, witnesses identified Defendant as having been in the area of the fire. Ms. Gray testified that Defendant made a threat about setting her house on fire, and she identified Defendant as one of the individuals running from her burning house. Defendant was not clearly prejudiced by the trial court's denial of his motion to sever. Defendant is not entitled to relief on this issue.

*Mistrial*

Defendant contends that the trial court erred by denying his request for a mistrial following testimony by Ms. Gray that Defendant sold drugs. Defendant argues that Ms. Gray's testimony amounted to inadmissible "character proof" and could have "easily tipped the scales in the State's favor."

The decision of whether to grant a mistrial is within the sound discretion of the trial court. *State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). Normally, a mistrial should be declared only if there is a manifest necessity for such action. *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). One description of manifest necessity is that, "[i]f it appears that some matter has occurred which would prevent an impartial

verdict from being reached," a mistrial must be declared. *Id.* Additionally, a manifest necessity exists when "no feasible alternative to halting the proceedings" exists. *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981). The defendant bears the burden of establishing a manifest necessity. *State v. Seay*, 945 S.W.2d 755, 764 (Tenn. Crim. App. 1996). This court will not disturb that decision unless there is an abuse of discretion. *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990); *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

In determining whether a mistrial is warranted because of inappropriate testimony of a witness, our supreme court has used the following three nonexclusive factors: "(1) whether the State elicited the testimony, or whether it was unsolicited and unresponsive; (2) whether the trial court offered and gave a curative jury instruction; and (3) the relative strength or weakness of the State's proof." *State v. Nash*, 294 S.W.3d 541, 547 (Tenn. 2009) (citing *State v. Smith*, 893 S.W.2d 908, 923 (Tenn. 1994)).

Defendant filed a motion in limine asking the trial court to exclude from evidence any references to Defendant's drug dealing, specifically testimony by Rickey Gray that he saw the defendants run into a house that he thought drugs were sold from and any references to a "trap" house, which is a name for a drug house. The trial court granted Defendant's motion and excluded any witness references to drug activity, finding that such evidence was not relevant. On cross-examination by counsel for Defendant about which house Ms. Gray saw Defendant run inside, Ms. Gray testified:

> Q.     Now, who owns that first duplex?
>
> A.     A guy named Derrick Matthews, but Mayne and Moonhead [Defendant] and them was running drugs out of that house.

Following that testimony by Ms. Gray, counsel for Defendant requested a bench conference. During a jury-out hearing, the trial court instructed Ms. Gray not to testify "about the fact that they were selling drugs out of that house" and instructed the prosecutor to "reiterate [that point] with the rest of the [State's] witnesses." The trial court also stated that it would give a curative instruction to the jury. Counsel for Defendant requested a mistrial, and the trial court denied the request.

The trial court then gave the following curative instruction to the jury:

> [D]uring Ms. Gray's testimony there was some mention of [Defendant] and Mayne having something to do with or having some involvement with drugs. Drugs has [sic] nothing to do with this case. It's not involved in this

case. We're trying a case of arson, so any issue about that – any mention of that has no bearing ont his case.

Do y'all understand that? You can't consider that for any purpose. The only issue we're going to be here to determine is whether or not there was an arson involved. Does everybody understand that?

Defendant acknowledges that he failed to include this issue in his motion for new trial and asks this court to "take a liberal view" of his motion for new trial, in which he stated that it was error for the trial court to deny "the motion for mistrial after counsel for the codefendant elicited testimony regarding evidence of statements made regarding [Defendant] which were excluded when the court granted Defendant [ ]'s Motion in Limine." At the hearing on Defendant's motion for new trial, the trial court asked for clarification on the issue, and counsel argued that based on the trial court's ruling that no references of drug activity be admitted, it was error not to grant a mistrial after co-defendant Taylor testified that he had used drugs. Counsel made no argument regarding Ms. Gray's testimony or the trial court's failure to grant a mistrial following her testimony.

Issues relating to the admission or exclusion of evidence that are not raised in a motion for new trial are deemed to be waived on appeal. *See* Tenn. R. App. P. 3(e). Nevertheless, applying the list of non-exclusive factors above to the case herein, Ms. Gray's testimony was not a result of questioning by the State, but rather Ms. Gray's testimony came during cross examination by Defendant's counsel challenging her memory of where she saw Defendant run after the fire was set. Moreover, Ms. Gray's mention of drug activity was an isolated occurrence, and no other witnesses testified about it. The State's case against Defendant was relatively strong, and the trial court promptly gave a curative instruction. The trial court did not abuse its discretion in denying Defendant's request for mistrial. Defendant is not entitled to relief.

*Sufficiency of the evidence*

Defendant contends that the evidence was insufficient to support his conviction. Specifically, Defendant contends that there was no direct evidence establishing his guilt. Defendant points to a lack of physical evidence "such as DNA or fingerprints" and to inconsistencies in witness testimony, including Ms. Gray's testimony regarding the threat that was made toward her on the afternoon prior to the fire. Ms. Gray testified that Defendant made the threat, but on cross-examination, she stated that it was Mayne who made the threat. Defendant also points out that Ms. Gray did not include any mention of the threat in her written statement to Detective Roach.

Our review of a defendant's challenge to the sufficiency of the evidence to sustain a conviction is governed by well settled principles of law. Our standard of review regarding sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Id*. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. *State v. Dorantes*, 331 S .W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In *Dorantes*, our supreme court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *Id*. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. *Id*.

Defendant was convicted of facilitation of aggravated arson. Aggravated arson requires proof that a person knowingly damaged any personal property by means of fire without the consent of the owner and when (1) or more persons are present therein. *See* Tenn. Code Ann. § 39-14-302(a)(1). A person commits facilitation of a felony when "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [Tennessee Code Annotated section] 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a).

Viewed in a light most favorable to the State, the proof showed that Defendant and his friends engaged in an altercation with Ms. Gray's niece outside Ms. Gray's house on the afternoon before the fire. Ms. Gray overheard Defendant say, "don't worry about it because we going to burn the mother f***er down." During the early hours of the following day, Ms. Gray and her family awoke to the smell of smoke and discovered their house on fire. After they escaped the burning house, they saw three men running away from the house and laughing. The victims identified Defendant as one of the three men running down the street and entering a duplex. Expert testimony revealed that three fires were set around the house

and that an accelerant was used to start the fires. Rickey Gray testified that prior to Defendant's preliminary hearing, Mr. Gray's cousin, who shared a jail cell with Defendant, called Mr. Gray from jail, and Mr. Gray spoke to Defendant. Defendant told Mr. Gray to "keep it street and don't come to court."

Although no witness testified that they saw Defendant actually set the fires, the circumstantial evidence was such that the jury could have reasonably reached that conclusion. A conviction may be based entirely on circumstantial evidence. *See Dorantes*, 331 S.W.3d 370, 380-81 (Tenn. 2011). Any inconsistencies in witness testimony were resolved by the trier of fact. We conclude that the evidence was sufficient to sustain Defendant's conviction. Defendant is not entitled to relief on this issue.

After a careful review of the record and the briefs of the parties, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE